VOELKER, Appellant, v. GRAND LODGE OF BROTHERHOOD OF LOCOMOTIVE FIRE-MEN, Defendant, JOERGENSEN et al., Interpleaders, Respondents.

### St. Louis Court of Appeals, December 15, 1903.

1. **MUTUAL LIFE INSURANCE ASSOCIATIONS: Proceeds of Beneficiary Certificates: To Whom Payable.** The proceeds of a beneficiary certificate issued by a beneficiary brotherhood, the rules of which make the same payable to relatives in a certain order, form no part of the estate of the deceased; the fund belongs wholly to the lawful beneficiary and it is not subject to the defrayal of expenses incurred at the request of, or on agreement with, the deceased.

2. ———: ———: ———. In an action by one, not a relative, named as beneficiary, in a beneficiary certificate, for the proceeds of the same, which by the rules of the order was payable to the parents and then to other relatives in order, where the alleged parents interplead for the fund, and the issue was one of fact as to the identity of the deceased, the evidence is examined and held sufficient to sustain the finding of the chancellor that deceased was the son of the interpleaders.

Appeal from St. Louis City Circuit Court.—*Hon. Warwick Hough*, Judge.

AFFIRMED.

*Thos. Morris* for appellant.

(1) When one is known to be alive at a certain time there is a presumption of the continuance of his life after that period which must be overcome by some sort of proof. Hancock, Admr., v. Life Ins. Co., 62 Mo. 26; Lancaster, Admr., v. Life Ins. Co., 62 Mo. 121. Our statute in relation to the presumption of death from an

absence of seven successive years does not apply when the absentee was last seen in this State, and is not shown to have departed from it.    Begeler v. Supreme Council of American Legion of Honor, 57 Mo. App. 419.    That a person has not been heard from for some years does not establish his death in the absence of proof that he had left the State.    Dickens v. Miller, 12 Mo. App. 408.    (2)    The burden of proof is upon the interpleaders to prove that Julius Emil Joergensen and Julius Johnson and John Johnson are one and the same person, and the finding of the circuit court can not be sustained unless the appellate court find from the evidence that Julius Emil Joergensen, Julius Johnson and John Johnson are one and the same person.    Hubbard v. Fuchs, 164 Mo. 426; Gannon v. Gas Light Co., 145 Mo. 543.    Death can not be proved by reputation, except under particular circumstances, which were not proved and do not exist in this case.    Steward v. Stephens, 26 How. Pr. 244; Cole v. Moffet, 20 Barb. 18; Fosgate v. Herkimer, 12 Barb. 352; Wilson v. Brownlee, 24 Ark. 586, 589.    Appellate courts will draw with a firm hand the line between tangible evidence and reasonable and legitimate deductions on the one hand, and mere conjecture or speculation on the other.    Glick v. Railroad, 57 Mo. App. 97; Leech v. Bank of Maryville, 74 S. W. 416.    (3)    It has been frequently decided in this State in a civil action where a transaction on its face is as consistent with honesty as it is with fraud, that the finding ought to be in favor of the former and against the latter. The plaintiff in this case shows an honest, upright course all through his relations with John Johnson.    Is the action of the interpleaders from the evidence tainted with fraud?    Dullam v. Renshaw, 26 Mo. 533; Chapman v. McIlwrath, 77 Mo. 38; Webb v. Darby, 94 Mo. 621; Page v. Dixon, 59 Mo. 43; Rumbolds v. Parr, 51 Mo. 592.    (4)    Courts of equity have no more rights than courts of law to act upon crude notions of what is right in a particular case without reference to estab-

lished rules and precedents. Shell v. West, 125 Mo. 621; United States Casualty Co. v. Kacer, 169 Mo. 301; Meredith v. Meredith, 79 Mo. App. 640; Roberts v. Central Lead Co., 95 Mo. App. 586; Palmer v. Crisle, 92 Mo. App. 510; Robertson v. Shepherd & Stone, 169 Mo. 360. (5) He who seeks equity must do equity. Where the lower court decided in favor of respondents, it should have, in its decree, required them to do equity by the plaintiff, and reimburse him for his expenditures to the amount of over $500.00. Paquin v. Miliken, 163 Mo. 105; Pomeroy's Eq. Juris., Sections 3, 4 and 398; Warvelle on Vendors, pp. 73, 76; Bispham's Prin. of Equity, secs. 67 and 69; Irwin v. Bleakley, 76 Penn. St. 24; Vawter v. Bacon, 89 Ind. 565; Cronk v. Trunable, 66 Ill. 428; Warren v. Richmond, 53 Ill. 52; Stow v. Russell, 36 Ill. 18; Southworth v. Hopkins, 11 Mo. 331; Turner v. Mellier, 59 Mo. 526; Electric, etc., v. Gill, 125 Mo. 140; Rosenburg v. Jones, 118 Mo. 559; O'Reilly v. Diss, 41 Mo. App. 184. It is a maxim of equity that he who takes the benefit should bear the burden. Springfield Grocer Co. v. Wallace, 95 Mo. App. 527; Kline v. Vogel, 90 Mo. 239; Joplin v. Walton, 138 Mo. 492. (6) In equity cases the evidence is reviewable by the appellant as upon first impression. It is the duty of the court to review the evidence and make its own finding of facts, and it may admit or exclude evidence that was admitted or rejected by the trial court. Baxter v. Donnell, 69 Mo. App. 588; Goodrich v. Harrison, 130 Mo. 263; Bush v. Arnold, 50 Mo. App. 8; Hanna v. Land Co., 126 Mo. 1; Downing v. Dinwiddie, 132 Mo. 92.

*Paul F. Coste* for respondents.

(1) Not a single proposition of law is in issue in this controversy. The sole issue in the case is the question of the identity of the deceased—altogether an issue of fact. Much of the evidence submitted at the trial was oral testimony of witnesses. The case was thoroughly

and patiently heard and considered by an experienced and judicious chancellor, who found that the deceased described as John Johnson was in reality Julius E. Joergensen, the son of the interpleaders, Carl D. and Dorothea Joergensen, and rendered a decree accordingly. There was ample evidence to support such finding and judgment and, as a trial judge is in a more favorable position to judge of the credibility of witnesses and the weight of their testimony as affected by their demeanor on the witness stand, an appellate court will, in the absence of manifest error, not be disposed, as a rule, to disturb or reverse the conclusions and findings of fact of a trial judge in an equity case. Carter v. Dilley, 167 Mo. 571; Dunivan v. Dunivan, 157 Mo. 160; Chouteau v. Allen, 70 Mo. 366; Erskine v. Loevenstein, 82 Mo. 309; Springer v. Kleinsorge, 83 Mo. 159; Berry v. Hartzell, 91 Mo. 138; Mathias v. O'Neill, 94 Mo. 530; Chance v. Jennings, 159 Mo. 560; Becht v. Becht, 168 Mo. 528; Arn v. Arn, 81 Mo. App. 140; Robertson v. Reed, 38 Mo. App. 36. (2) Interpleader is a purely equitable proceeding. Duke v. Duke, 93 Mo. App. 244.

GOODE, J.—This is a contest between rival claimants for the proceeds of a beneficiary certificate issued by the Grand Lodge of Brotherhood of Locomotive Firemen. This certificate was for $1500; bore the date of May 8, 1899, and was issued to John Johnson, payable to "Louis Voelker, his friend." Johnson's application for the insurance was made November 20, 1898. In the application he stated that he resided at number 1203 Chouteau avenue, was born in Texas, April 17, 1872, and would be twenty-seven years old his next birthday. On the back of the application were blank spaces in which the medical examiner was required to insert the answers of the applicant in regard to his family history, which were required to be truthfully made to the examiner; also statements of the examiner himself con-

cerning the physical condition of the applicant. In this report of the medical examiner, the age of Johnson's father and mother, if they were then living, was stated to be fifty-three and fifty-two years respectively; of a brother, twenty-one years. It was also stated that their health was good; but there is a notation opposite those statements as follows: "This was eight years ago when the applicant left home. He has heard nothing of them since and does not know whether they are dead or alive."

A rule of the Brotherhood requires benefit certificates to be paid at the death of an insured member; first, to the widow; second, to his child or children; third, to his father; fourth, to his mother; fifth, to his brothers and sisters; if any of those relatives survive him. A member is given the right to designate as beneficiary whomsoever he chooses if he has none of the above mentioned kindred. Johnson's application was unsatisfactory to the officers of the order, as it did not certainly state whether he had relatives to whom the benefit ought to go, according to the above rule, when he died; for if he had, the certificate could not be made payable to Louis Voelker. Johnson was notified of the defect and thereupon wrote a letter to an officer of the lodge in St. Louis, which Johnson desired to join. This letter was as follows:

"St. Louis, 4—8, 1899.
"Mr. R. E. McKenzie,
"Dear Sir & Brother:
"In regard to your reply will say that my folks are all dead and would like to have certificate made out to Louis Voelker. That is the way I had it made out.
"Yours truly,
"JOHN JOHNSON."

On receipt of this letter the certificate was granted with Voelker as beneficiary. Johnson died at St. Mary's Hospital in the city of St. Louis, September 7, 1899.

Proof of his death was made to the satisfaction of the Grand Lodge and, as it refused to pay the proceeds of the certificate to Voelker, he instituted an action in the circuit court to recover it.   The Brotherhood of Locomotive Firemen then filed an answer in the nature of a bill of interpleader, setting up the laws of the order in regard to the payment of death benefits, and that the proceeds of Johnson's certificate were claimed not only by Voelker, the named beneficiary, but by Carl D. Joergensen and Johanna D. Joergensen as father and mother of the deceased.   The Brotherhood paid the fund into court, with a prayer that the alleged parents of the deceased and Wm. C. Richardson, public administrator in charge of the estate, be made parties defendant and the Brotherhood discharged.   Pursuant to an order of the court commanding them to interplead for the fund, said alleged parents filed their interplea, in which they averred that the deceased, John Johnson, was in truth their son Julius Emil Joergensen, who was born April 17, 1870, in the town of Vester Aaby, Denmark.   They further pleaded the rule of the order making certificates payable in the first instance to the parents of a deceased member, alleged that Voelker was not related to the deceased John Johnson, or Julius Joergensen, and prayed judgment for the fund.

Voelker filed an answer denying that John Johnson and Julius Emil Joergensen were the same person; that said Johnson was the son of Carl D. and Johanna D. Joergensen; that he was born in Denmark, or that the in interpleaders had any right to the fund.   The issue thus joined is as to the personal identity of the deceased member.   Was the man who lived and died in St. Louis under the name of John Johnson the same individual who was born in Denmark as the son of the interpleaders, or another person?   If he was Julius Joergensen and had assumed the name of John Johnson, it is conceded by the plaintiff that the interpleaders are entitled to the fund, less certain expenses incurred by plaintiff

in caring for the deceased in his last illness and in burying him, pursuant to an agreement he made with the deceased when the insurance was taken for his (Voelker's) benefit. The interpleaders resist any allowance to Voelker, and contend the entire amount should be paid to his parents.

As to whether or not Voelker is entitled to an allowance on account of said expenses, is the only legal proposition involved in the case and may be disposed of at once. There is justice in Voelker's claim; but a deduction can not be made in his favor, if the interpleaders are the real beneficiaries. The fund is no part of the estate of the deceased; but belongs wholly to the lawful beneficiary, and is not subject to the defrayal of expenses incurred at the request of, or on agreement with, the deceased. If Johnson had living parents, the rule of the order forbade him to make a bargain with Voelker that the latter should care for him in sickness and bury him at death in consideration of a death benefit. He was bound to make the benefit payable to his parents. In fact, the by-law of the Brotherhood made it payable to them.

On the question of the identity of the deceased member, a mass of testimony was taken in this country and Europe, consisting of depositions of the interpleaders, their children and some of their friends in Denmark; letters which passed between them and their son Julius after he reached America; expert testimony as to the handwriting of the deceased based on a comparison of it with Julius Joergensen's; testimony by the St. Louis friends of the deceased as to his resemblance or lack of resemblance to a youthful photograph of Julius Joergensen; and other facts. We have taken pains to go through all this evidence and reflect over it. At the conclusion of our investigation we find no sufficient reason to dissent from the conclusion reached by the trial judge, that the deceased was Julius Emil Joergensen, the son of the interpleaders.

The interpleaders are people in humble circumstances, living as stated, in a small town in Denmark. They had five children, of whom three (two daughters and a son) are still living in that kingdom. Their fourth child, Julius Emil Joergensen, was born April 17, 1870. In the year 1888, at the age of eighteen, he emigrated to America and went at once to Kansas City, where he arrived in June and remained about a year and one-half. While in Kansas City he worked for a gardener in the country nearby, attending to hot-houses and caring for teams. He wrote several letters of an affectionate tenor to his parents while there, telling them of his voyage across the ocean, his employment and prospects. From those letters we gather that he was desirous of obtaining railroad employment. The last letter he wrote from Kansas City was dated November 18, 1889. The next letter to his parents was written from San Antonio, Texas, June 8, 1890. In it he told of herding cows and horses on the plains in the Indian country, where he seems to have been employed as a cowboy. One passage of that letter is seized by the plaintiff as supporting his theory of the facts. It is a statement of the writer that he had found a companion while working with cattle in the Indian territory whom he discovered, after they had been acquainted about two months, to be from Sweden. A tie sprang up between them on account of their coming from neighboring countries. The theory of the plaintiff is that this companion was the deceased John Johnson; that he and Julius Joergensen became fast friends, used the same trunk in common, and that letters written to Julius Joergensen by his parents and relatives in Denmark and found in the trunk of the deceased after his death in St. Louis, were left there by Julius Joergensen, while the two friends were living together and both using the trunk in common. It should be stated that one strong circumstance to identify Johnson as Joergensen is the fact that numerous family letters were found in Johnson's trunk, addressed to Julius

Joergensen and sometimes to Julius Johnson. Voelker and other St. Louis associates swore they noticed the letters in the trunk with those superscriptions and, on one occasion, inquired of Johnson how he happened to have letters addressed to a man by the name of Joergensen; that Johnson replied they were letters written to a friend whom he had known in Texas eight years before and that they got in the trunk because the two made common use of it.

Julius Joergensen wrote letters to his parents from San Antonio until December, 1892, and perhaps longer; but we find none in the record later than that date. From those letters it appears that he roved a great deal in Texas, associating with persons of different nationalities, and following different occupations, finally becoming a locomotive fireman, and working as such more than a year; how much longer can not be gathered. While in Kansas City he signed several letters written to his parents with the name, Julius Johnson. In writing from San Antonio he subscribed his letters indifferently, Julius Emil Joergensen and Julius Johnson; but gave the address his parents should use in writing to him as Julius Johnson, Lone Star Bakery, San Antonio, Texas; and afterwards as 13 North Flores street, San Antonio, Texas. The interpleaders testified that their son wrote them other letters signed, John Johnson; but none of those were put in evidence. No reason is given why he changed his name to Johnson, nor does the evidence in the case throw any light on this circumstance. Neither is there any testimony that Johnson is the English form for the Danish name, Joergensen. Letters written by the parents, and their testimony, prove a correspondence continued between them and their son at infrequent intervals after 1892, until March 27, 1899, which is the date of the son's next and final letter. It was written from St. Louis, and is as follows:

"March 27, 1899.

"St. Louis, Mo.

"My Dear Parents:

"Yes long it is since I last wrote to you and I am almost ashamed to write, but I hope that this letter may find you all well and in good health.

"I am very well and have good work on the railroad and make good money.

"I intend to be home with you next Christmas for a little while and hope to find you all together once more. Yes it is now eleven (11) years since I left and parted from you all at home, but the Lord be praised and thanked he has done everything so wonderful well for me I have never been sick one day in all the long time I have been here. Yes, I believe he is now on my track and will hope that we still once more may meet at home in the old country and if not that we all may meet here above in the eternal habitations where it is good to be because it is our best home.

"Yes dear it is very hard for me to write this letter but I know you will all be glad to hear from me and I hope you can read it.

"I am longing very much to hear from you and will soon write again.

"Do not be worried for me as I am very well.

"Now I will close for this time with a friendly greeting to all my brothers and sisters and yourselves from me, your faithful and affectionate son,

"(Signed)          JULIUS E. JOERGENSEN,

Farewell.

"My address is

JULIUS JOHNSON,

St. Louis, Mo.,

North America."

That was the last communication, so far as the record discloses, from Julius Joergensen to his parents. All the correspondence which passed between the parties

is in an affectionate strain and gives the impression that the son had been raised by pious, God-fearing parents, and remembered their admonitions. His letters frequently breathed homesickness and the desire and hope of visiting his family soon. We find no traces of Julius under the name of Joergensen, from the time of the last letter, and it seems that after that date his parents had no tidings of him.

The deceased person who bore the name of John Johnson appeared in the city of St. Louis, so far as the evidence reveals, in 1894, and secured employment from Gustav Weber, a soda water manufacturer, as stableman. He worked for Weber from March 3, 1894, to August 30, 1897; after that he obtained work as fireman with the Terminal Railway Company and continued in that service until his death. While with Weber, he became acquainted with Louis Voelker, the plaintiff, and the two became friends. Johnson stated to several acquaintances in St. Louis, including Voelker and Weber, that he had no relatives living. These statements were made at the time he took the benefit insurance. He also stated that he was born in Texas and that his parents had lived in either Sherman or San Antonio, the witnesses were not positive which place.

The handwriting of the letters written by Julius Joergensen to his parents was compared with signatures of Johnson affixed to various railway papers, while he was fireman, and to his application for insurance in the Brotherhood. The evidence was quite contradictory as to whether the writing was by the same person. A photograph of Julius Joergensen, taken when he was eighteen years old was exhibited to persons who knew John Johnson in St. Louis, and they differed as to whether the photograph of the boy resembled the man they knew. Some witnesses were positive it represented the same person, and others equally positive that it was totally unlike Johnson. There was testimony that Johnson was a large man, weighing one hundred and seventy pounds;

whereas Julius Joergensen was only five feet, four inches and weighed about one hundred and fifty pounds when he left Denmark. This evidence is of small value, because the boy may have grown into a large man. Both Joergensen and Johnson, as they were known to their acquaintances, had fair hair and skin, blue eyes and were of the Scandinavian type of men,. There was evidence that Johnson stated to friends in St. Louis that he was of Swedish descent, and this testimony, and other facts above stated concerning the letter written by Joergensen in Texas in which he speaks of forming a friendship with a Swede, the presence of the Joergensen letters in Johnson's trunk and his statement that they had belonged to a friend in Texas, are put forward by the plaintiff's counsel to maintain the theory that Johnson, instead of being Julius Emil Joergensen, was another person, to-wit, the Swedish friend Joergensen had known while herding cattle in Texas.

Several facts emerge from the evidence which strike our minds as particularly significant. It is certain that Julius Joergensen left San Antonio and came to St. Louis after 1892, and wrote letters from St. Louis to his parents as late as March, 1899. If he and Johnson were different persons who had been acquainted in Texas, it is strange they lived in St. Louis for several years without forming mutual friends who knew them as two individuals. If the plaintiff's theory be true, Johnson and Joergensen must have been about St. Louis a great deal from 1894 to 1899; but none of the associates of Johnson speak of ever seeing him in company with Joergensen, or of knowing such a man. Julius Joergensen had charge of horses in Kansas City and San Antonio, and was afterwards a locomotive fireman in the latter place. When we first learn of Johnson in St. Louis he is working as a stableman for Weber, and afterwards gets employment as a fireman. It would be a noteworthy coincidence if the Swedish friend whom Joergensen knew in Texas should subsequently

become as Julius did, a railway fireman, and still later prosecute the same business in St. Louis, as we know Julius Joergensen did, from the letter written to. his parents in March, 1899, in which he spoke of working on a railroad. We know, too, that, from an undisclosed motive, Julius Joergensen sometimes called himself Johnson and had his parents address him as Julius Johnson. If their testimony is to be believed, he occasionally wrote to them under the name of John Johnson. When the deceased made application for the insurance he stated he was born April 17, 1872; Julius Joergensen was born April 17, 1870. It is another coincidence if Johnson's friend in Texas was born on the same day of the same month he was. Julius E. Joergensen has never been heard of by his relatives or parents in Denmark since Johnson died.

That Johnson dissembled concerning his past appears from his telling the medical examiner, when he made application for insurance, that his parents were living and in good health eight years before when he left home, but that he had heard nothing from them since, and declaring a month or two thereafter that his folks were all dead.

While the case is mysterious the proven facts strongly incline us to the belief entertained by the learned trial judge, that the deceased John Johnson was Julius Emil Joergensen, who, for some reason, chose to conceal his identity after he came from Texas to St. Louis. If we leaned to the opposite belief, we would be much disposed to yield our own judgment in favor of that of the court below on the issue of fact presented; for this is peculiarly a case in which the manner of witnesses while testifying, and the impressions gleaned during the trial, are important.

Judgment affirmed. *Bland, P. J.,* and *Reyburn, J.,* concur.